**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CERTARA USA, INC.,

Plaintiff

v.

EDVISE INC.,

Defendant.

Civil Action No. 25-1230-GBW

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 35 U.S.C. § 101**

Dated: January 29, 2026

OF COUNSEL:

Ryan M. Hubbard
FOX, SWIBEL, LEVIN & CARROLL LLP
200 West Madison St., Suite 3000
Chicago, IL 60606
(312) 224-1200
rhubbard@foxswibel.com

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Defendant Edvise Inc.*

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. NATURE AND STAGE OF THE PROCEEDINGS ..... 2

III. SUMMARY OF THE ARGUMENT ..... 2

IV. FACTUAL BACKGROUND ..... 2

V. STANDARD FOR MOTION TO DISMISS ..... 5

- A. Patent Eligibility ..... 6
- B. Infringement ..... 7

VI. ARGUMENT ..... 8

- A. The ’492 Patent is Not Eligible for Patent Protection ..... 8
- B. Certara Fails to Set Forth a Plausible Claim of Direct Infringement ..... 16
- C. Certara’s Perfunctory Claims of Indirect Infringement Fail ..... 19

VII. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)........................................................................................ 13

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)..................................................................................... 7, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
573 U.S. 208 (2014)........................................................................................................ passim

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................... 5, 6

*Blackbird Tech LLC v. Adv. Discovery Inc.*,
No. 16-413-GMS, 2017 WL 2734725 (D. Del. June 26, 2017) ........................................... 9

*Boston Sci. Corp. v. Nevro Corp.*,
415 F. Supp. 3d 482 (D. Del. 2019)................................................................................ 8, 19

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021). ......................................................................................... 16

*Cascades Branding Innovation LLC v. Aldi, Inc.*,
728 F. Supp. 3d 917 (N.D. Ill. 2024) .................................................................................. 4

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)........................................................................................ 13

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)............................................................................................. 6

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017)........................................................................................... 4

*Cogent Medicine, Inc. v. Elsevier Inc.*,
70 F. Supp. 3d 1058 (N.D. Cal. 2014) ............................................................................. 10

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)............................................................................................................. 7

*Data Engine Techs LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018)...................................................................................... 11, 14

*Diamond v. Diehr*,
450 U.S. 175 (1981)........................................................................................................ 6

*Eagle View Techs, Inc. v. Roofr, Inc.*,
No. 21-1852-RGA, 2023 WL 315633 (D. Del. Jan. 19, 2023)......................................... 10, 15

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)................................................................... 8, 10, 13, 14

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)........................................................................................ 12

*Epic IP LLC v. Backblaze, Inc.*,
351 F. Supp. 3d 733 (D. Del. 2018).................................................................................. 12

*Gottschalk v. Benson*,
409 U.S. 63 (1972)............................................................................................................ 6

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
222 F.3d 951 (Fed. Cir. 2000)............................................................................................ 5

*In re Bd. of Trs. of Leland Stanford Junior Univ.*,
991 F.3d 1245 (Fed. Cir. 2021)........................................................................................ 15

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012).......................................................................................... 8

*In re Marco Guldenaar Holding B.V.*,
911 F.3d 1157 (Fed. Cir. 2018).......................................................................................... 6

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)........................................................................................ 11

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 13321 (Fed. Cir. 2017)...................................................................................... 13

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
850 F.3d 1315 (Fed. Cir. 2017)........................................................................................ 12

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019)........................................................................................ 12

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
572 U.S. 915 (2014)...................................................................................................... 7, 19

*Mayer v. Belichick*,
605 F.3d 223 (3d. Cir. 2010).............................................................................................. 6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012)....... 6

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
690 F.3d 1354 (Fed. Cir. 2012)....... 7, 18

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) ....... 3, 10

*Nuance Comms., Inc. v. MModal LLC*,
No. 17-1484-MN-SRF, 2018 WL 6585129 (D. Del. Dec. 14, 2018) ....... 10

*O2 Media, LLC v. Narrative Science, Inc.*,
149 F. Supp. 3d 984 (N.D. Ill. 2016) ....... 10

*Oakwood Labs. LLC v. Thanoo*,
999 F.3d 892 (3d. Cir. 2021)....... 6

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ....... 9

*Power Analytics Corp. v. Operation Tech., Inc.*,
No. 16-1955, 2017 WL 5468179 (C.D. Cal. July 13, 2017)....... 10, 15

*Recentive Analytics, Inc. v. Fox Corp.*,
134 F.4th 1205, 1213-14 (Fed. Cir. 2025) ....... passim

*Recentive Analytics, Inc. v. Fox Corp.*,
692 F. Supp. 3d 438 (D. Del. 2023)....... 14

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017)....... 13

*Ricoh Co., Ltd. v. Quanta Comp. Inc.*,
550 F.3d 1325 (Fed. Cir. 2008)....... 7

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)....... 10, 13, 14

*Tenaha Licensing LLC v. Ascom (US) Inc.*,
No. 19-568-LPS-SRF, 2020 WL 30427 (D. Del. 2020) ....... 4

*TrackTime, LLC v. Amazon.com, Inc.*,
No. 18-1518-MN, 2019 WL 2524779 (D. Del. June 19, 2019)....... 12

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009)....... 7

**Statutes**

35 U.S.C. § 101 .......... 1, 2, 6

35 U.S.C. § 271 .......... 7

## I. INTRODUCTION

Abstract ideas are not patentable under 35 U.S.C. § 101. The Federal Circuit has recently affirmed this Court's decision that using generic machine learning technology in a new environment is abstract and therefore unpatentable. *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213-14 (Fed. Cir. 2025). Courts regularly invalidate similar claims that implement an abstract idea with conventional computer technology, including at the pleading stage. This Court should therefore dismiss Certara USA Inc.'s ("Certara") complaint against Edvise Inc.

The patent in suit, U.S. 11,132,492 (the "'492 Patent") (D.I. 1-1) claims a method for "automatically populating entries in a table" using a "machine learning module." But populating entries in a table or filling out a spreadsheet has long been a mental activity that a human could carry out with a pencil and paper. The '492 Patent seeks to replace this human with a generic machine learning module, but Certara does not claim that it invented or improved on machine learning technology. Instead, Certara merely asserts that it is applying this existing technology to the field of spreadsheets. *See* Complaint, D.I. 1 at ¶ 16. Indeed, the '492 Patent even relies on the same disclosure of generic computer and processing components as the patent this Court found unpatentable in *Recentive.* Under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014), such a claim is not entitled to patent protection.

Certara's claims for direct, induced, and contributory infringement are also contradicted and undermined by the factual allegations it set forth on the face of the Complaint. Certara does not state a plausible claim for infringement of the '492 Patent, and Edvise therefore moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II. NATURE AND STAGE OF THE PROCEEDINGS

Certara filed its Complaint against Edvise on October 3, 2025. D.I. 1. The parties have stipulated to an extension of time for Edvise to respond to the Complaint to January 29, 2026. D.I. 13. No schedule has been set and the parties have not yet commenced discovery.

## III. SUMMARY OF THE ARGUMENT

1. The claims of the ’492 Patent are directed to abstract ideas and claim nothing inventive to transform those abstract ideas into patent-eligible applications. They are therefore ineligible for patent protection under 35 U.S.C. § 101.
2. Certara’s allegations of infringement are contradicted by the materials on which it relies in its complaint, revealing that several limitations of the asserted claims of the ’492 Patent are not met.
3. Certara has failed to sufficiently allege Edvise’s knowledge of infringement to state a claim for either induced or contributory infringement.
4. Because it is apparent from the face of the ’492 Patent that the claims are not directed to eligible subject matter under § 101, and because it is apparent from the face of the Complaint that the claims are not infringed, it is appropriate to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. FACTUAL BACKGROUND[1]

The ’492 Patent is titled “Methods for Automated Filling of Columns in Spreadsheets,” and issued on September 28, 2021 from Application No. 17/064,230. D.I. 1-1. The ’492 Patent is directed to systems and methods relating to “populating entries in a table” using a machine learning module. D.I. 1-1 at 11:25-26; D.I. 15 at ¶ 15. Certara alleges that the claimed inventions of the

[1] For the sake of this motion only, and except as noted herein, Edvise will treat the facts set forth in the Complaint as true.

’492 Patent “have enabled more convenient and less laborious incorporation of data into spreadsheets by using machine learning modules, such as modules that include natural language processing capability, to automatically identify multiple responses to a question based on user provided data and populate the responses into cells in the spreadsheet.” D.I. 1 at ¶ 16. A basic block diagram of the steps of identifying responses to a question is provided in Figure 1 of the ’492 Patent:




FIG. 1

The Complaint asserts that Edvise infringes claims 1-4, 7-8 and 11 of the ’492 Patent, but only sets forth specific facts and allegations regarding claim 1. D.I. 1 at ¶ 22. Claim 1 is an independent method claim, and claim 7 is an independent system claim. D.I. 1-1 at 11:25-54; 12:14-47. Aside from this difference, and the recitation of a “memory” and optional “one or more associated datasets” in claim 7, the two claims are essentially identical. A comparison of each of the independent claims is included in Ex. A. All of the claims are therefore “substantially similar and linked to the same abstract idea,” of using a machine learning module to populate a table, such that claim 1 of the ’492 Patent is representative. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*,

859 F.3d 1352, 1360 (Fed. Cir. 2017)); *see also Tenaha Licensing LLC v. Ascom (US) Inc.*, No. 19-568-LPS-SRF, 2020 WL 30427, at *3 (D. Del. 2020) (treating a claim as representative where the complaint "only explicitly calls out" that claim and plaintiff referred to it as "exemplary"); *Cascades Branding Innovation LLC v. Aldi, Inc.*, 728 F. Supp. 3d 917, 925-26 (N.D. Ill. 2024) (examining a single representative claim where Complaint alleged infringement of multiple claims but only specifically alleged facts as to a single claim).

Claim 1 recites a "method for automatically populating entries in a table" which comprises the functional concepts of (1) "receiving" a template question including a variable which corresponds to multiple instances of the variable stored in a "variable column" of the table; (2) "automatically identifying" a response to the template question for the instantiations of the variable "using a machine learning module"; (3) "populating" responses to the template question in a "smart column" of the table; and (4) "automatically updating" the "smart column" when an entry in the "variable column" is edited. D.I. 1-1 at 11:25-54. Table 1 of the '492 Patent provides an example, in which the variable column is a list of company names, and the smart column is a list populated with answers to the question "Who is the CEO" of each company. *Id.* at 4:26-55.

The '492 Patent does not provide any details on how the algorithm performs the claimed method or how the "machine learning module" identifies a response. It simply states that "A machine learning module [then] determines answer to the question," and that "[i]n certain embodiments, a machine learning module automatically obtains answers using a dataset … ." *Id.* at 5:10-16. The specification refers to a variety of different types of generic software which could be used as the "machine learning module," including a variety of known "QA" systems such as Alexa, Siri, and IBM's Watson, and several already-known datasets. *Id.* at 1:38-44; 2:42-54.

The ’492 Patent also does not disclose any particular computer system to perform the claimed method. Instead, it refers to a generic “Network Environment” and “Computing Devices” that may be used in various embodiments. *Id.* at 6:15-11:21-23. This recitation, along with Figures 2 and 3, account for approximately half of the disclosure of the ’492 Patent, but appear to be an essentially verbatim copy from the disclosures of prior patent applications by other inventors. *Compare* D.I. 1-1 at 8:24-9:65, 10:44-11:8, Fig. 3 *with* U.S. Patent No. 10,911,811 at 5:6-6:37, 8:7-45, Fig. 4 (the “*Recentive* Patent”) attached as Ex. B; *compare* D.I. 1-1 at 3:65-4:32, 6:17-7:29, 7:40-10:26, 10:44-11:8, *with* U.S. Patent No. 10,572,545 at 13:50-14:4, 23:30-27:65, Figs. 9-10, attached as Ex. C.[2] As a particular example, the bottom portion of Fig. 3 of the ’492 patent is identical to Fig. 4 of the *Recentive* Patent, with the numbers updated from 4xx to 3xx.

<table>
<tr><th>’492 Patent Fig. 3</th><th>Recentive Patent Fig. 4</th></tr>
<tr><td>


FIG. 3
</td><td>


FIG. 4
</td></tr>
</table>

## V. STANDARD FOR MOTION TO DISMISS

To survive dismissal under Rule 12(b)(6), a complaint must “contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Twombly/Iqbal* standard requires “more than labels and conclusions, and a formulaic recitation of

[2] Patents, like their prosecution history, are matters of public record. *See, e.g.*, *Hockerson-Halberstadt, Inc. v. Avia Group Int’l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000).

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545. The plaintiff must set forth sufficient factual allegations to "nudg[e] their claims across the line from conceivable to plausible." *Id*. at 547. Although courts must draw all reasonable inferences in favor of the plaintiff, the court must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d. Cir. 2021). In deciding a Rule 12(b)(6) motion, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d. Cir. 2010).

**A. Patent Eligibility**

Patent eligibility under 35 U.S.C. § 101 "may be determined at the Rule 12(b)(6) stage of a case . . . [if] there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (cleaned up); *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1159 (Fed. Cir. 2018).

Section 101 of the Patent Act "contains an important implicit exception. '[L]aws of nature, natural phenomena, and abstract ideas' are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012) (quoting *Diamond v. Diehr*, 450 U.S. 175, 185 (1981)) (alteration in original). An invention is only patent eligible if it "in practice amounts to significantly more than" a monopoly over an abstract idea itself. *Id.* at 71-73. A patent cannot simply state an abstract idea "while adding the words 'apply it,'" *id.* at 72, because "tying up" "basic tools of scientific and technological work," would "inhibit future innovation premised upon them" to an unacceptable degree. *Id.* at 86 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

In *Mayo* and *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208 (2014), the Supreme Court set out a two-part test for evaluating whether an invention is patentable under § 101. In Step

1, the Court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea. *Alice*, 573 U.S. at 217. If so, the Court proceeds to Step 2, reviewing the elements of each claim "individually and as an ordered combination" to determine whether they contain an "inventive concept" that nonetheless transforms "the claimed abstract idea into a patent-eligible application." *Id.* at 217, 221.

**B. Infringement**

Direct infringement requires that a defendant make, use, offer to sell, or sell a patented invention within the United States or import a patented invention into the United States. 35 U.S.C. § 271(a). Method claims, such as claim 1 of the '492 Patent, "are not infringed unless all the steps are carried out." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014). Each step of the claims must also be "performed by or attributed to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Likewise, for method claims, "the sale of a product, without more, does not infringe the patent. Instead, direct infringement of a method claim requires a showing that every step of the claimed method has been practiced." *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) (internal citations omitted); *see also Ricoh Co., Ltd. v. Quanta Comp. Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) (The "actual carrying out of the instructions is that which constitutes a process within the meaning of § 271(a).").

To plead induced infringement under 35 U.S.C. § 271(b), a plaintiff must allege sufficient facts to plausibly show that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Induced infringement requires not only that the defendant "knew of the patent" but that it knew "the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).

To state a claim for contributory infringement, "a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012). As with induced infringement, contributory infringement requires both "knowledge of the patent in suit and knowledge of patent infringement." *Boston Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 491 (D. Del. 2019). The component must be "known by the party 'to be especially made or especially adapted for use in an infringement" of the patent. *In re Bill of Lading*, 681 F.3d at 1337.

## VI. ARGUMENT

### A. The '492 Patent is Not Eligible for Patent Protection

The claims of the '492 Patent merely recite the abstract idea of populating data in a table using generic machine learning technology running on a conventional processor. The claims fail both steps of the *Alice* framework under well-established caselaw and this Court's prior decisions.

#### 1. The '492 Patent Is Directed to an Abstract Idea Under *Alice* Step One

Claim 1 of the '492 Patent merely describes the automation, using a "machine learning module" of the otherwise "laborious, piecemeal addition of data" to a spreadsheet. D.I. 1-1 at 1:20-25. "Claimed methods are not rendered patent eligible by the fact that (using existing machine learning technology) they perform a task previously undertaken by humans with greater speed and efficiency than could previously be achieved." *Recentive*, 134 F.4th at 1214. Similarly, patents which are directed to "[C]ollecting information, analyzing it, and displaying certain results of the collection and analysis" are a "familiar class of claims directed to a patent-ineligible concept." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

With the exception of the "machine learning module" and the "automation" of the process, each of the steps of the claimed method can be performed in the human mind or by a person using

a pencil and paper to "populat[e] entries in a table." Referring to Table 1 of the '492 Patent as an example, a human working from a list of company names (the "variable column") could answer the "template question" of "Who is the CEO of [each company]" either from their own personal knowledge or by looking up the answer. They could then pencil in that answer next to each company name to populate the "smart column." If they needed to change or add a new company to the list, they could again pencil in a new answer to the "smart column."

TABLE 1

| Company Names | Smart Column (Who is the CEO of [Company Names]?) |
|---|---|
| Acme Inc. | Who is the CEO of Acme, Inc.? (Cell is filled with answers found) |
| Widgets R. Us | Who is the CEO of Widgets R. Us? (Cell is filled with answers found) |
| XYZ Systems | Who is the CEO of XYZ Systems? (Cell is filled with answers found) |
| ABC Firm | Who is the CEO of ABC Firm? (Cell is filled with answers found) |

D.I. 1-1 at 4:43-55.

Although this process might be decried as "piecemeal" and "laborious" by the '492 Patent, it is merely an existing human process that has been automated. This "is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317 (Fed. Cir. 2021) (internal citations omitted). "Humans have long been capable of sorting and organizing data, and using a computer to automate this concept is abstract." *Blackbird Tech LLC v. Adv. Discovery Inc.*, No. 16-413-GMS, 2017 WL 2734725, at *4 (D. Del. June 26, 2017).

The claims are directed to nothing more than mental steps of looking up and gathering data and organizing it into a spreadsheet, which, absent some claimed improvement to the computer

technology itself, has been repeatedly found abstract. *See, e.g.*, *Mobile Acuity*, 110 F.4th at 1293 ("generalized steps of collecting, analyzing, and presenting information, using nothing other than the conventional operations of generic computer components, are directed to abstract ideas"); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018) ("the selection and mathematical analysis of information, followed by reporting or display of the results" was "wholly abstract"); *Elec. Power,* 830 F.3d at 1353 ("[W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."); *Nuance Comms., Inc. v. MModal LLC*, No. 17-1484-MN-SRF, 2018 WL 6585129, at *7-8 (D. Del. Dec. 14, 2018) ("selecting information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis" abstract where "the specification makes clear that off-the-shelf computer technology is usable to carry out the analysis"); *Eagle View Techs, Inc. v. Roofr, Inc.*, No. 21-1852-RGA, 2023 WL 315633, at *8 (D. Del. Jan. 19, 2023) (claims which, "apart from generic computer-implemented activities, recite processes that can be accomplished off the computer" found abstract); *Power Analytics Corp. v. Operation Tech., Inc.*, No. 16-1955, 2017 WL 5468179, at *4-6 (C.D. Cal. July 13, 2017) ("gathering information, e.g., real-time and predicted data values, and analyzing and updating a model with that information" found to be abstract); *O2 Media, LLC v. Narrative Science, Inc.*, 149 F. Supp. 3d 984, 994 (N.D. Ill. 2016) (patent covering finding relevant information, organizing and analyzing it, and presenting it in a usable format claimed mere abstract idea); *Cogent Medicine, Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1063 (N.D. Cal. 2014) (claims for "maintaining and searching a library of information" held abstract).

Certara asserts that "the claimed systems and methods incorporate machine learning modules into spreadsheets in a manner that, prior to the inventions of the '492 patent, was not well-

understood, routine, or conventional activity in the field." D.I. 1-1 at ¶ 16. However, the Federal Circuit has already addressed the question of "whether claims that do no more than apply established methods of machine learning to a new data environment are patent eligible" and, affirming this Court's prior ruling, held that "they are not." *Recentive*, 134 F.4th at 1213-1214 ("We see no merit to Recentive's argument that its patents are eligible because they apply machine learning to this new field of use."). The Federal Circuit also reiterated that "the claimed methods are not rendered patent eligible by the fact that (using existing machine learning technology) they perform a task previously undertaken by humans with greater speed and efficiency than could previously be achieved." *Id.* at 1214; *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("our precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.").

Neither the claims nor the specification of the '492 Patent describe how the machine learning module operates or how it might interface with a spreadsheet. The '492 Patent does not claim any improvement to the machine learning module itself, and instead refers only to existing conventional software such as NLP, BERT, Question Answer, IBM Watson, Alexa and Siri. D.I. 1-1 at 1:38-44, 2:39-54, 3:9-23. Nor does the patent claim or disclose any improvements related to training the machine learning module, noting only that others have already trained chatbots and digital assistants, *id.* at 1:38-44, and that numerous datasets could be used, *id.* at 2:49-54. Indeed, the only discussion of the machine learning module's operation is that it "determines answer to the question" and then "this process is repeated for each question." *Id.* at 5:10-16.

Unlike one of the claims at issue in *Data Engine Techs LLC v. Google LLC,* 906 F.3d 999, 1007-1008 (Fed. Cir. 2018), the '492 Patent is not directed to a "specific method for navigating

through three-dimensional electronic spreadsheets," but instead to "populating a table" using a generic "machine learning module." Indeed, Certara attempts to disavow any particular table structure, arguing that "row and column are relative terms of orientation," D.I. 1 at ¶ 34, and attempting to read claim 1 on a chat interface that begins from an empty spreadsheet, D.I. 1 at ¶¶ 27-35. In applying *Data Engine*, courts in this District have noted that the upheld claim was directed to "improving functionality of complicated electronic spreadsheets by using a notebook tabbed interface, a specific structure that was more user friendly and allowed for faster and more convenient navigation of the spreadsheet and thereby avoided the problems of prior art." *TrackTime, LLC v. Amazon.com, Inc.*, No. 18-1518-MN, 2019 WL 2524779, at *5-6 (D. Del. June 19, 2019). However, the claims of the '492 Patent "are taking something that was done before by hand" and does not identify any improvement in the function of the device "or any recitation in the claims of how any purported improvement is achieved." *Id.* The claims here merely relate to the organizing and accessing of data, "which includes longstanding conduct that existed well before the advent of computers and the Internet." *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 746 (D. Del. 2018) (distinguishing *Data Engine* and quoting *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017)).

The '492 Patent does not disclose or claim "a specific implementation of a solution to a problem in the software arts," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016), or "a specific means or method that solves a problem in an existing technological process," *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019). Instead, it merely discloses the use of machine learning in the new environment of adding data to a spreadsheet. *Recentive*, 134 F.4th at 1213. Because "the specification makes clear that off-the-

shelf computer technology is usable to carry out the analysis," the '492 Patent is abstract. *SAP Am.*, 898 F.3d at 1168.

### 2. No Inventive Concepts Transform the Claimed Abstract Ideas Into Patent-Eligible Inventions Under Alice Step 2

The next step of the *Alice* inquiry is whether the elements of the claims recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 218. "An inventive concept reflects something more than the application of an abstract idea using 'well-understood, routine, and conventional activities previously known to the industry.'" *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018)). The analysis looks "more precisely at what the claim elements add." *Elec. Power*, 830 F.3d at 1353; *see also RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident in the claims.").

The '492 Patent does not involve any unique technology and instead relies on conventional techniques and computer hardware. Rather than describe any inventive algorithm or process, the claims rely on results-oriented functional language "that merely describes the functions of the abstract idea itself, without particularity," which is "simply not enough under step two." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017). Accordingly, the Complaint should be dismissed.

#### a) Conventional Computing Components or "Processors" Do Not Provide an Inventive Concept.

The claims of the '492 Patent recite computing components such as a "processor" and "memory." D.I. 1-1 at 11:25-54, 12:14-47. However, the specification of the patent only refers to generic and conventional computing technology, operating in a conventional way. Indeed, the

’492 Patent appears to crib its disclosure of generic computing devices almost verbatim from other patents by other inventors, including the “generic computing device” from the patent that this Court invalidated in *Recentive Analytics, Inc. v. Fox Corp.*, albeit after changing the word “generic” to “mobile.” 692 F. Supp. 3d 438, 456 (D. Del. 2023) (Williams, J.); *compare* D.I. 1-1 at 8:24-9:65, 10:44-11:8, Fig. 3 *with* Ex. B (*Recentive* Patent) at 5:6-6:37, 8:7-45, Fig. 4; *compare* D.I. 1-1 at 3:65-4:32, 6:17-7:29, 7:40-10:26, 10:44-11:8, *with* Ex. C at 13:50-14:4, 23:30-27:65, Figs. 9-10; *see also Recentive*, 134 F.4th at 1212 n.4.

Nor does the claims’ reference to various columns, rows, and variables in a spreadsheet provide an inventive concept. *See Recentive*, 134 F.4th at 1214 (“We have also held the application of existing technology to a novel database does not create patent eligibility”) (citing *SAP Am., Inc.*, 898 F.3d at 1168 and *Elec. Power*, 830 F.3d at 1353). These steps of manipulating the table, populating data into cells, and updating them “merely recite the method of implementing the abstract idea itself, and thus fail under *Alice* step two.” *Data Engine*, 906 F.3d at 1012 (steps of “partitioning cells to be presented as a spreadsheet,” “referencing in one cell of a page a formula referencing a second page,” and “saving the pages such that they appear as being stored as one file” did not provide an inventive concept).

Viewing the steps of ’492 Patent claims as an “ordered combination” still would add nothing to the steps considered separately. *See Alice*, 573 U.S. at 224; *Recentive*, 134 F.4th at 1215. Even viewed as a whole, the method recites automating a purely mental process of populating the rows and columns of a table that can be performed by a human person. *Recentive*, 134 F.4th at 1215 (“we perceive nothing in the claims, whether considered individually or in their ordered combination, that would transform the [patents] into something ‘significantly more’ than

the abstract idea of generating event schedules and network maps through the application of machine learning").

"Generic steps of implementing and processing calculations with a regular computer do not change the character of [the claim] from an abstract idea into a practical application. *In re Bd. of Trs. of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1250 (Fed. Cir. 2021); *see also Eagle View*, No. 21-1852-RGA, 2023 WL 315633, at *8 ("conventional technology to implement conventional steps" not enough to confer patent eligibility). These generic and conventional computing components fail to provide an inventive concept that transforms the claimed abstract idea.

**b) The "Machine Learning Module" Does Not Provide an Inventive Concept.**

Certara attempts to point to the "machine learning module" as "not well-understood, routine, or conventional activity in the field." D.I. 1 at ¶ 16. But as this Court has previously held, and the Federal Circuit has affirmed, this is nothing more than claiming the abstract idea itself. *Recentive*, 134 F.4th at 1216. This is particularly true where the "machine learning module" itself is merely generic, conventional technology. *Id.* at 1212. The '492 Patent does not purport to have invented any such "machine learning module," or made any improvements in the training or operation of such a module, but instead refers to a variety of generic software, including known "QA" systems such as Alexa, Siri, and IBM's Watson, and several already-known datasets. D.I. 1-1 at 1:38-44; 2:42-54. The claims of the '492 Patent merely refer to "using" the module in a functional way to identify a response to a question. *See Power Analytics*, No. 16-1955, 2017 WL 5468179 at*6, *aff'd sub nom*, Fed. Appx. 334 (Fed. Cir. 2019). This imparts no "inventive concept" to the abstract idea.

Because the claims of the ’492 Patent do not recite any specific improvement in technology or an inventive concept, they are ineligible.

### B. Certara Fails to Set Forth a Plausible Claim of Direct Infringement

Although Certara’s complaint attempts to map claim 1 of the ’492 Patent against the Endex product using a tutorial video, the excerpts on which Certara relies demonstrate that each limitation of the claims are not met. “Where, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim.” *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021).

As an example, claim 1 requires a “template question” which comprises:

> one or more variables, each of said one or more variables corresponding to a variable column containing a plurality of instantiations of said variable, each instantiation listed in a separate row, wherein said variable column is a column other than the smart column;

D.I. 1-1 at 11:30-35. In support of this limitation, Certara relies on a “prompt” which a user could provide to the Endex product.



D.I. 1 at ¶ 27. The first contradiction is that the prompt does not include any question at all, much less a "template question." It includes a series of statements instructing the Endex product to generate a spreadsheet, but it does not ask any questions, such as the average salary for an engineer.




D.I. 1-1 at ¶ 27.

More problematically, as Certara admits, the spreadsheet is blank. D.I. at ¶ 35. Even if there were a "template question," the tutorial on which Certara relies shows that there is no "variable column containing a plurality of instantiations of said variable." Because the spreadsheet is empty, there is no "variable column," "instantiation" or "smart column" at all. There is nothing for any purported "variables" in the template question to "correspond to" and there is nothing "contained" in a variable column that doesn't exist. Although Certara argues that certain "user-provided assumptions" are later populated into a row of a spreadsheet, D.I. 1 at ¶ 27, that does not change the fact that the received "template question" did not correspond to anything.

Indeed, because there is no existing structure to the spreadsheet, Certara's identification of "variables" and "instantiations" shifts throughout its complaint. For example, it first identifies a "Team of 8" as the variable, D.I. 1 at ¶ 28, but if that is the case there is no "plurality of instantiations," because there is only one version of the "Team of 8" (2 sales, 3 engineer, 1 product, 1 marketing, 1 ops). In an attempt to avoid this deficiency, Certara instead refers to the "role" and "number of employees having that role" as if they were separate variables with separate instantiations for the "identifying" and "populating" steps, *id.* at ¶¶ 29-32. However, the "role" and "number of employees having that role" were not included as variables in the purported "template question." Nor did the purported "template question" ask for the "average salary" for an employee role as a "response." *Id.* at ¶¶ 29, 32. Certara's attempt to read the '492 Patent onto a prompt to the Endex product is expressly contradicted by its own Complaint, which shows that there is, at a minimum, no "template question comprising one or more variables" and no "variable column containing a plurality of instantiations of said variable."

To the extent Certara argues that, with a differently formatted prompt and if used in combination with an existing spreadsheet, the Endex product might meet claim 1, *see* D.I. ¶¶ 35, 37, it is essentially arguing that Edvise is selling a product that *might* be used by Edvise's customers to infringe. But "the sale of a product, without more, does not infringe the patent" where a method claim is asserted. *Meyer Intellectual Props.*, 690 F.3d at 1366. In addition, this requires the customer to supply their own processor and their own specifically formatted spreadsheet, to input their own precise prompt to Endex, and to later edit an entry in their spreadsheet. There is no allegation that Edvise controls its users, and as such, it cannot infringe because each step of the claims is not alleged to be "performed by or attributed to a single entity." *Akamai*, 797 F.3d at 1022.

### C. Certara's Perfunctory Claims of Indirect Infringement Fail

All of Certara's indirect infringement allegations fail at least because it has failed to plausibly allege any underlying direct infringement, as discussed above. *See Limelight Networks*, 572 U.S. at 921. The Complaint at paragraphs 20-22 also fails to allege any plausible factual support for Edvise's intent or knowledge of any infringement of the '492 Patent "beyond conclusory statements that merely recite the legal requirements for induced and contributory infringement." *Boston Sci.*, 415 F. Supp. 3d at 492. Certara's claims for both induced and contributory infringement should therefore be dismissed. *Id.*

In addition, as already discussed above, the tutorial relied on by Certara does not instruct the user on how to set up a "template question" with "variables" that each correspond to a "variable column containing a plurality of instantiations of said variable." *See Supra* VI.B. This tutorial thus did not "knowingly induce" infringement. Similarly, with respect to contributory infringement, the Complaint itself demonstrates that the Endex product has substantial non-infringing uses. For example, the Complaint notes that the "Endex product 'can be used for nearly any Excel task,'" D.I. 1 at ¶ 37, which would include numerous tasks and features not alleged to infringe. In addition, as shown in the Complaint, the Endex product can receive a freeform chat prompt, D.I. 1 at ¶ 26, which would allow it to perform a variety of spreadsheet functions without populating or updating a "smart column" or receiving a "template question." The Complaint thus demonstrates that the Endex product has substantial non-infringing uses. Certara's claims of indirect infringement must be dismissed.

## VII. CONCLUSION

For the foregoing reasons, Edvise respectfully requests that the Court find that the ’492 Patent does not claim eligible subject matter, find that Certara’s Complaint does not set forth a plausible claim for direct or indirect patent infringement, and dismiss Certara’s Complaint.

Dated: January 29, 2026

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

Ryan M. Hubbard
FOX, SWIBEL, LEVIN & CARROLL LLP
200 West Madison St., Suite 3000
Chicago, IL 60606
(312) 224-1200
rhubbard@foxswibel.com

*Attorneys for Defendant Edvise Inc.*